ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **OFICINA DE ÉTICA GUBERNAMENTAL**<br><br>Recurrida<br><br><br>v.<br><br><br>**ENRIQUE H. QUESTELL ALVARADO**<br><br>Recurrente | KLRA202400259 | **REVISIÓN** procedente de la **Oficina Gubernamental de Puerto Rico**<br><br>Caso Núm.: **22-18**<br><br>Sobre: Violación al Artículo 5.6 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo

Boria Vizcarrondo, Jueza Ponente.

### RESOLUCIÓN

En San Juan, Puerto Rico, a 12 de julio de 2024.

Comparece ante nos, mediante *Recurso de Revisión Administrativa* presentado el 23 de mayo de 2024, el señor Enrique H. Questell Alvarado (Sr. Questell o Recurrente), quien fungió como alcalde del Municipio de Santa Isabel entre el 2005 y el 2021, y nos solicita que revisemos la *Resolución*[1] emitida el 22 de abril de 2024 por la Oficina de Ética Gubernamental (OEG). Mediante dicha *Resolución*, OEG adoptó la totalidad del *Informe de la Oficial Examinadora* (*Informe*)[2] y condenó al Sr. Questell al pago de $5,500.00 y a presentar la información requerida.

Por los fundamentos que discutiremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] Apéndice de *Recurso de Revisión Administrativa*, Anejo 36, págs. 183-210. Notificada y archivada en autos el 23 de abril de 2024.
[2] *Íd.*, págs. 187-211.

**I.**

El caso de marras se originó el 14 de septiembre de 2021 tras la presentación de una *Querella*[3] ante la OEG en contra del Sr. Questell. En la misma, se alegó que el Sr. Questell, no cumplió con un *Requerimiento de Información* que le envió el Área de Auditoría de Informes Financieros de la OEG (AAIF).

Según la *Querella*, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada, 3 LPRA sec. 1854 *et seq.* (Ley Núm. 1-2012), requiere que las personas que ocupen el puesto de Alcalde rindan informes financieros ante el AAIF. Debido a que el Sr. Questell fungió como alcalde de Santa Isabel entre el 2005 y 2021, tenía el deber de cumplir con las exigencias de la Ley Núm. 1-2012. El Artículo 5.4 de dicha Ley dispone que la OEG podrá solicitar información adicional en el informe financiero mediante Requerimientos de Información. A tales fines, el 23 de abril de 2019, el AAIF le envió al Sr. Questell un *Requerimiento de Información* para que este sometiera información financiera omitida y adicional para los informes financieros de los años 2016 y 2017.[4]

En el *Requerimiento*, la OEG le informó al Sr. Questell que se encontraba en el proceso de revisar sus informes financieros y que dicho esfuerzo requería que el Sr. Questell enmendara los informes sometidos para los años 2016 y 2017. Según surge del *Requerimiento*, los informes de 2016 y 2017 contenían información incompleta o hacían referencia a información omitida. Tanto para el año 2016 como el 2017, solicitó la siguiente información incompleta:

> **1.** Información correspondiente a los cargos de Presidente y Secretario ocupados en Aquamak Corp.
> **2.** Los ingresos y/o dividendos que recibió entre el 1 de enero de 2016 y el 31 de diciembre de 2017 por ocupar los cargos de Presidente y Secretario en Aquamak Corp.
> **3.** Información sobre las siguientes cuentas de banco:

---

[3] *Íd.*, Anejo 1, págs. 1-6.
[4] *Íd.*, Anejo 24, págs. 108-113.

       **a.** First Bank- cuenta de cheques número 1202119116.
       **b.** Banco Popular de Puerto Rico- referente a los intereses incluidos como ingresos en la Sección 5 de los informes financieros.
       **c.** Banco Santander- cuenta de cheques número 3107180116.

**4.** Segregar y reportar por separado las propiedades ubicadas en el Barrio Pueblo, Santa Isabel y en el Barrio Velázquez, Santa Isabel.

**5.** Completar los encasillados de Deudas u Obligaciones con relación a las propiedades inmuebles informadas.

**6.** Información sobre la deuda de una tarjeta de Chase Bank ascendente a $23,606.00. Si la misma fue saldada, que informe la fuente del dinero utilizado.[5]

Además, la OEG solicitó la siguiente información:

**1.** El tipo de negocios o servicios que ofreció Aquamak Corp. durante el 2016 y el 2017, y los deberes y tareas del Presidente y Secretario de la entidad.

**2.** Surge de una certificación del Centro de Recaudaciones de Ingresos Municipales (CRIM) que el Sr. Questell posee las siguientes propiedades inmuebles que no fueron incluidas en la Sección 12 de su informe financiero:

       **a.** Propiedad localizada en el Barrio Playa, Santa Isabel con número de catastro 437-046-004-05-901.
       **b.** Propiedad localizada en la calle 7 Blq. K8, Jardines Santa Isabel, Santa Isabel, número de catastro 415-095-140-13-000.
       **c.** Propiedad localizada en la calle Descarte, Santa Isabel, número de catastro 437-006-023-39-998.

Debe proveer la información relacionada con estas propiedades o explicarlas. También debe informar si estas produjeron algún tipo de ingresos para el periodo de 1 de enero de 2016 hasta el 31 de diciembre de 2017.

**3.** Surge de una certificación por la Autoridad de Acueductos y Alcantarillados (AAA) que el Sr. Questell tiene una propiedad no incluida en la Sección 12 de los informes ubicada frente al Club Náutico #4, Santa Isabel, PR 00757.

**4.** Surge de una certificación emitida por la Autoridad de Energía Eléctrica que el Sr. Questell tiene las siguientes cuentas relacionadas a propiedades no reportadas en la Sección 12 de los informes:

       **a.** Cuenta de servicio para una propiedad ubicada en la calle El Malecón, Barrio Playa El Aquarium, Santa Isabel, PR 00757-0749.
       **b.** Cuenta de servicio para una propiedad ubicada en Villas del Mar, Barrio Playa, Santa Isabel, PR 00757-0749.
       **c.** Cuenta de servicio para una propiedad ubicada en la calle Betances 14, Santa Isabel, PR 00757.
       **d.** Cuenta de servicio para una propiedad localizada en la calle A A3, Haciendas del Monte, Ponce, PR 00730.

**5.** Surge de una certificación del Departamento de Transportación y Obras Públicas (DTOP) que el Sr.

---

[5] *Íd.*, págs. 108-111.

Questell posee un vehículo de motor Toyota Corolla 2017, tablilla número ITL-620. Dicho vehículo no fue incluido en la Sección 10 de los informes.[6]

Del *Requerimiento,* consta que el Sr. Questell estaba vinculado con una serie de propiedades muebles e inmuebles que no reportó en sus informes financieros para el 2016 y 2017. La OEG adquirió conocimiento de estas propiedades mediante certificaciones de otras agencias gubernamentales que el Sr. Questell era dueño de cuentas de servicios para las propiedades. A la luz de la información provista en los informes, la OEG no pudo saber si el Sr. Questell había comprado las propiedades durante su tiempo como alcalde y, si las compró, ¿cómo lo hizo y con qué dinero? Tampoco podía constar si el Sr. Questell generaba ingresos de las mismas. Además, proveyó información incompleta relacionada con cuentas bancarias, deudas de tarjetas de crédito y sobre una corporación en la cual aparenta que fungió como Presidente y Secretario durante el 2016 y 2017.

El 2 de mayo de 2019, el Sr. Questell suscribió un documento en el que no contestó el *Requerimiento* e indicó que no tenía nada que enmendar o proveer relacionado a los informes financieros 2016 y 2017.[7] No proveyó la información solicitada ni ofreció explicaciones. En consecuencia, el 17 de mayo de 2019, el AAIF activó el procedimiento de Vista Informal y citó al Sr. Questell para el 6 de junio de 2019. No obstante, el Sr. Questell no compareció ni se excusó de la Vista Informal pautada. La vista fue reseñalada para el 12 de julio de 2019, a solicitud del Sr. Questell. Durante la vista reseñalada, el Sr. Questell arguyó que el *Requerimiento* era improcedente puesto que el AAIF no cumplió con el término dispuesto por la Ley Núm. 1-2012, *supra,* para realizar la auditoría. Pese a que la OEG le concedió varias oportunidades al Sr. Questell

---

[6] *Íd.*, págs. 109-112.
[7] *Íd.*, pág. 114.

para pagar una multa de $300.00 y someter la información requerida, este no cumplió.

El 24 de octubre de 2019, el AAIF emitió un *Informe Final* en el que recomendó que se le impusiera una multa de $500.00 por alegadas violaciones al Artículo 5.6 (2) de la Ley Núm. 1-2012. Ese mismo día, el *Informe Final* fue adoptado en su totalidad. No obstante, el Sr. Questell no cumplió con el término que se le concedió para cumplir con lo ordenado. Así las cosas, el 14 de septiembre de 2021, la OEG presentó la *Querella.*

El 3 de noviembre de 2021, el Sr. Questell contestó la *Querella* y adujo que cumplió a cabalidad con sus obligaciones y que el AAIF no presentó su *Requerimiento* dentro del término de noventa (90) días que dispone la Ley Núm. 1-2012, a partir de la entrega del informe financiero.[8] Además, el 15 de noviembre de 2021, el oficial examinador asignado, el licenciado Urayoán Pérez Alemán, emitió una orden en la cual dispuso expresamente "que no se permitirá el uso del mecanismo de deposición".[9] Esta prohibición era aplicable tanto al Sr. Questell como a la OEG.  Por esto, el Sr. Questell alegó que se le estaba violando su derecho al descubrimiento de prueba. Tras varios trámites procesales, el 11 de abril de 2024, la oficial examinadora asignada al caso, la licenciada Evelyn J. Almodóvar Pérez, emitió su *Informe* mediante el mecanismo de resolución sumaria que permite la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.* (LPAU).[10]

Tras la determinación de hechos relevantes y las conclusiones del derecho aplicable, la Lcda. Almodóvar concluyó que al no cumplir con el *Requerimiento,* el Sr. Questell violó el Artículo 5.6 (3)

---

[8] *Íd.*, Anejo 4, págs. 10-15.
[9] *Íd.*, Anejo 5, pág. 16.
[10] *Íd.*, Anejo 36, págs. 187-211.

de la Ley Núm. 1-2012. Por lo tanto, recomendó la imposición de una multa adecuada y que se le ordene al Sr. Questell cumplir con la presentación de los informes financieros según el *Requerimiento*.[11]

Inconforme, el 23 de mayo de 2024, el Sr. Questell presentó oportunamente el *Recurso de Revisión Administrativa* ante nuestra consideración. Mediante esta comparecencia, señaló los siguientes errores:

> **PRIMER ERROR: ERRÓ LA OEG AL CONCLUIR QUE EL PERIODO DE AUDITORÍA EN TODO CASO ES DE UN MÍNIMO 2 AÑOS CON 90 DÍAS Y NO REQUERIR EVIDENCIA DE HABER DETECTADO INFORMACIÓN NO JUSTIFICADA DENTRO DEL PERIODO DE LOS PRIMEROS 90 DÍAS DE AUDITORÍA.**
>
> **SEGUNDO ERROR: ERRÓ LA OEG AL VIOLAR EL DERECHO CONSTITUCIONAL Y ESTATUTARIO DE QUESTELL AL NEGARLE EL USO DE DEPOSICIONES DURANTE EL DESCUBRIMIENTO DE PRUEBA.**
>
> **TERCER ERROR: ERRÓ LA OEG AL NO DESESTIMAR LA QUERELLA, PORQUE NO SE JUSTIFICABA UNA INVESTIGACIÓN EXHAUSTIVA PREVIO A LA PRESENTACIÓN DE LA QUERELLA.**

El 21 de junio de 2024, compareció la OEG y presentó su *Alegato en Oposición*. Con el beneficio de la comparecencia de las partes, nos encontramos en posición para resolver.

## II.

## A.

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, (4 LPRA sec. 24y (c)), faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al

---

[11] *Íd.*, pág. 211.

momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la LPAU, *supra*, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra*, Sec. 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.
>
> *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa".

*Íd.*, pág. 116. Al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, *supra*, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd.* En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**B.**

Mediante la Ley Núm. 1-2012, *supra*, el Gobierno de Puerto Rico creó la Oficina de Ética Gubernamental, cuya misión es "educar al servidor público para que, en el desempeño de sus funciones, exhiba los valores de bondad, confiabilidad, justicia, responsabilidad, respeto y civismo que rigen la administración pública". *Íd.*, Artículo 2.1 (A). Con los fines de cumplir con su misión, la Ley Núm. 1-2012 habilitó a la OEG para fiscalizar la conducta de los servidores públicos y penalizar a todos aquellos que transgreden la normativa ética que integra los valores del servicio público. *Íd.* De

esta manera, y cónsono con su carácter preventivo, la OEG tiene a su disposición los mecanismos necesarios para hacer cumplir con sus disposiciones y fiscalizar a los servidores públicos. *OEG v. Martínez Giraud, supra*, pág. 92.

Entre estos, está el requisito de que todo servidor público tiene el deber de rendir informes financieros durante los años en los cuales ejerce su posición.

> En cumplimiento con el reclamo del Pueblo de que los servidores públicos elegidos o de que aquellos a quienes por la naturaleza del trabajo que realizan tienen que presentar una imagen intachable y libre de cualquier conflicto, sin importar la Rama del Gobierno en la cual se desempeñan, desde 1985 y, posteriormente, reiterado en 1996, se les requirió que presentaran informes sobre sus finanzas personales ante la Oficina.

Ley Núm. 1-2012, *supra*, Exposición de Motivos.

Específicamente, el Artículo 5.1 de la Ley Núm. 1-2012, *supra*, dispone que "[l]os alcaldes, los vicealcaldes y los administradores de los municipios" tienen el deber de rendir los referidos informes. *Íd.*, Artículo 5.1 (A) (9). El Artículo 5.2 de la Ley Núm. 1-2012, *Íd.*, dispone que los servidores públicos deben presentar informes financieros dispone la frecuencia y alcance de los informes financieros anuales. El Artículo 5.4 de la referida Ley, por su parte, dispone cual será el contenido de los informes financieros. Dispone que "[l]a [OEG] diseñará el formulario oficial, **con el contenido de información mínima** que se dispone más adelante en este Artículo[...]". *Íd.* (Énfasis nuestro). Lo dispuesto en el Artículo 5.4 **constituye la información mínima requerida para que un informe financiero sea considerado como completado**. Entre la información específica que debe contener **todo** informe financiero, el Artículo 5.4 dispone:

> **A.** *Información General:*
>     **1.** [...]
>     **2.** [...]
>     **3.** [...]
>     **4.** [...]

**5.** todas las relaciones de empleo o negocios.

**6.** [...]

**B.** *Ingresos:*

**1.** ingresos e intereses del servidor público y de su unidad familiar en propiedades muebles o inmuebles y en cualquier propiedad en su acepción más amplia;

**C.** *Activos:*

**1.** activos cuyo valor excedan de mil (1,000) dólares que incluye, entre otros, cuentas bancarias, acciones, fondos mutuos, opciones, pólizas de seguros, mobiliario y enseres eléctricos, pinturas, objetos de arte, antigüedades y colecciones, joyería y otras participaciones propietarias en empresas o negocios;

**2.** acciones de empresas privadas y públicas y bonos estatales o municipales y de cualquier otra modalidad cuyo valor exceda de mil dólares, y toda transacción realizada durante el periodo cubierto por el informe;

**3.** [...]

**D.** *Pasivos:*

**1.** deudas que hayan tenido un balance de más de mil dólares en cualquier momento durante el periodo cubierto por el informe, indicando el tipo de interés de cada deuda, incluyendo toda liquidación de deuda o de reducción a mil dólares o menos durante el periodo cubierto por el informe;

**2.** deudas de las que se esté recibiendo cualquier tipo de tratamiento especial o preferencial al compararse con el que reciben otros deudores del mismo acreedor en circunstancias similares por el mismo tipo de deuda;

**E.** *Otras transacciones financieras:*

**1.** transacciones de compra, venta o permuta de propiedades muebles o inmuebles;

**2.** arreglos o acuerdos para una remuneración futura;

**3.** una relación de todo regalo recibido, entre otros, el pago de transportación, de comidas, de alojamiento y de entretenimiento, con indicación del nombre y dirección del donante, cuando el valor total por donante exceda de doscientos cincuenta dólares por año y éste no sea un pariente;

**4.** toda otra información que, a juicio de la persona que somete el informe, sea pertinente para la correcta evaluación de su situación financiera en el contexto del interés público que inspira la presente Ley.

*Íd.*

Nuestro Tribunal Supremo ha resaltado que los servidores públicos tienen un "deber ministerial de someter un informe financiero para el año correspondiente **con toda la información requerida por la ley y el reglamento correspondiente**". *El Vocero de P.R. v. Nogueras I*, 138 DPR 103, 109 (1995). En consecuencia, un informe que omita la información requerida por el Artículo 5.4, o

que contenga información incompleta, no podrá ser considerado como presentado conforme a la Ley Núm. 1-2012.

Además, el Artículo 5.4 de la Ley Núm. 1-2012, *supra*, permite que la OEG solicite "información adicional en el informe financiero que presenten los servidores públicos de la Rama Ejecutiva y de la Rama Legislativa **que sea pertinente para la correcta evaluación de algún ángulo relacionado con la información requerida en este Artículo**, en el contexto del interés público que inspira la presente Ley". *Íd.*, Artículo 5.4. (Énfasis nuestro). Este mecanismo permite que la OEG requiera que un servidor público provea la información necesaria para analizar un informe financiero o completar el mismo sin iniciar el proceso de auditoría.

Por otro lado, el Artículo 5.5 (a) de la Ley Núm. 1-2012 dispone los términos dentro de los cuales la OEG debe completar su auditoría. *Íd.*, Artículo 5.5 (a). Este Artículo dispone:

> Dentro de los noventa (90) días siguientes a la fecha **de presentación del informe financiero**, la Oficina debe completar su auditoría. Si durante el proceso de auditoría se detecta alguna información no justificada, la Oficina iniciará una auditoría forense, que se concluirá dentro de los dos (2) años siguientes. Estos términos son de cumplimiento estricto. Si existe justa causa, la Oficina podrá prorrogar cada uno de estos términos por un periodo de noventa (90) días adicionales.

(Énfasis nuestro).

Por lo tanto, la OEG tiene noventa (90) días a partir de la fecha de presentación del informe financiero para completar su auditoría del mismo. Sin embargo, si la OEG detecta alguna información no justificada, esta iniciará una auditoría forense que debe concluir dentro de los próximos dos (2) años a partir de su inicio. Finalmente, la Ley permite que estos términos sean prorrogados por un periodo adicional de noventa (90) días. Así, si la OEG cumple con la Ley Núm. 1-2012, tiene dos (2) años y noventa (90) días para completar una auditoría de los informes financieros de un servidor público,

término que posiblemente podrá ser extendido por ciento ochenta (180) días si la agencia se acoge a las prórrogas. Es importante destacar que los términos para una auditoría comienzan a decursar luego de que el servidor público presente un informe financiero completo, con todos los requisitos del Artículo 5.4 de la Ley Núm. 1-2012.

Por esta razón, el Artículo 5.6 de la Ley Núm. 1-2012 también dispone la conducta delictiva que puede surgir con relación a la rendición de informes financieros falsos o incompletos o con la inatención o desacato de un requerimiento por parte de la OEG. En lo pertinente, el Artículo 5.6 dispone:

> Prohibiciones relacionadas con el informe financiero de un servidor o ex servidor público:
> 1. Haber enriquecido su patrimonio o el de un tercero, cuando tal enriquecimiento haya ocurrido con posterioridad a la asunción del cargo, empleo o encomienda y hasta cinco años después de haber concluido su desempeño, y no pueda justificar dicho enriquecimiento. Se entiende que ha habido enriquecimiento, no sólo cuando el patrimonio se haya incrementado con dinero o bienes, sino también, cuando se hayan cancelado o extinguido obligaciones que lo afectaban.
> 2. **No presentar informes financieros.**
> 3. **No someter la información requerida dentro del término señalado.**

*Íd.* (Énfasis nuestro).

El Artículo 5.7 (c), *Íd.,* por su parte, provee un mecanismo mediante el cual la OEG puede llevar a cabo una acción administrativa para sancionar al servidor público. Este dispone que:

> (c) Acción Administrativa
> Toda persona que viole las prohibiciones y las disposiciones establecidas en este Capítulo y en los reglamentos, en las órdenes o en las normas promulgadas a su amparo, puede ser sancionado por la Dirección Ejecutiva con multa administrativa que no excederá de veinte mil dólares por cada violación. Lo anterior no limita la facultad de la Dirección Ejecutiva de imponer, además de la multa administrativa, la sanción de triple daño. Así también podrá tomar en consideración la reincidencia para efectos de la imposición de la multa de este inciso.

> *Íd.*

En cuanto a las facultades investigativas que tiene la OEG, el Artículo 7.1 (a) dispone que la OEG puede iniciar una investigación *motu proprio*. Dicha investigación debe concluir dentro del término de estricto cumplimiento de un (1) año. *Íd.*, Artículo 7.1 (b). El procedimiento investigativo está detallado en el Capítulo 5 del Reglamento Sobre Asuntos Programáticos de la Oficina de Ética Gubernamental de Puerto Rico, Reglamento Núm. 8231, 18 de julio de 2012 (Reglamento OEG). El Artículo 5.3 del Reglamento OEG dispone que:

> Se celebrará una vista informal cuando el servidor o ex servidor público de la Rama Ejecutiva o miembro de la AEGPR no cumpla con presentar los informes financieros o la información solicitada. La vista será presidida por un funcionario designado por la OEG.
> a) [...]
> b) [...]
> c) Si la persona que incumplió presenta el informe financiero o la información solicitada y se acoge a la propuesta de multa[,] el funcionario designado por la OEG le enviará una notificación de cumplimiento. Dicha notificación dará por terminado el asunto y se archivará el mismo.
> d) Si la persona que incumplió no presenta el informe financiero o la información solicitada o no se acoge a la propuesta de multa, se celebrará la vista informal. En dicha vista, deberá presentar el informe financiero o la información requerida. Además, se dialogará sobre las circunstancias, si alguna, que expliquen el incumplimiento.
> e) En los casos en que la persona no presente en la vista informal el informe financiero o la información requerida, o no pague la multa propuesta, y no presente evidencia de que existió justa causa que explique el incumplimiento, el funcionario designado por la OEG podrá concederle un término adicional, para que cumpla y pague.
> Si cumple con todo lo requerido, el funcionario designado por la OEG dará por concluido el asunto y se lo notificará.
> f) [...]
> g) Luego de celebrada la vista informal, si se persiste en el incumplimiento, el funcionario designado por la OEF preparará un informe con sus recomendaciones para la aprobación de la Dirección Ejecutiva o su representante autorizado, quien emitirá la determinación sobre el caso.
> h) [...]

*Íd.*, Artículo 5.3.

Finalmente, y luego de agotar el procedimiento de la vista informal y la determinación de la Dirección Ejecutiva, si el servidor público continúa con su incumplimiento, el caso será referido al Área de Investigaciones y Procesamiento Administrativo (AIPA) para iniciar el procedimiento adjudicativo y la vista formal. *Íd.*, Artículo 5.7.

Conforme con lo dispuesto en el Capítulo 5 del Reglamento OEG, el Artículo 7.2 de la Ley Núm. 1-2012 dispone que "[u]na vez concluya la investigación aludida en el Artículo 7.1 y la Oficina entienda que se ha violado alguna disposición establecida en esta Ley, en los reglamentos, en las órdenes o en las normas promulgadas a su amparo, presentará una querella y llevará a cabo un procedimiento de adjudicación [...]". Por lo tanto, una investigación puede ser iniciada por la misma OEG y luego de culminar dicha investigación es que se debe presentar una querella e iniciar el procedimiento adjudicativo. No obstante, ni la Ley ni el Reglamento disponen de un término para el cual la OEG tiene para iniciar el proceso adjudicativo.

## C.

Sabido es que en los procedimientos administrativos, las Reglas de Procedimiento Civil, 32 LPRA Ap. V, y las Reglas de Evidencia, 32 LPRA Ap. VI, no aplican automáticamente. *Otero v. Toyota*, 163 DPR 716, 734-735 (2005). "Esta ordinaria inaplicabilidad responde al interés de que las agencias administrativas operen de manera más flexible que los tribunales". J.A. Echevarría Vargas, *Derecho administrativo puertorriqueño*, 5ª ed. rev., San Juan, Ed. SITUM, 2023, pág. 261. No obstante la norma citada, nuestro Tribunal Supremo ha resuelto que se pueden adoptar los principios y normas fundamentales de las Reglas, siempre y cuando estas no sean incompatibles con los propósitos del proceso administrativo y propicien una solución justa, rápida y

económica. *Florenciani v. Retiro*, 162 DPR 365, 370 (2004); *O.E.G. v. Rodríguez*, 159 DPR 98, 112 (2003).

En lo pertinente al descubrimiento de prueba, la Sección 3.8 de LPAU, *supra*, dispone que:

> (a) Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. No obstante lo anteriormente dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia.

Por su parte, el Reglamento OEG, *supra*, dispone que:

> (a) Las partes podrán utilizar los mecanismos de descubrimiento de prueba establecidos en las Reglas de Procedimiento Civil de Puerto Rico vigentes. El oficial examinador o juez administrativo podrá delimitar el descubrimiento de prueba y resolver todo incidente relacionado.

*Íd.*, Artículo 6.8 (a).

Nuestro Tribunal Supremo ha resaltado que la discreción que ejerce un oficial examinador o juez administrativo al momento de delimitar los mecanismos de descubrimiento de prueba "no es absoluta; su ejercicio está limitado por el debido proceso de ley". *Ramírez v. Policía de P.R.*, 158 DPR 320, 339 (2002). Dicha discreción debe estar basada en la razonabilidad. *Íd.*

En *Ramírez v. Policía de P.R.*, *Íd.*, el Tribunal pautó la normativa con relación a la delimitación de los mecanismos de descubrimiento de prueba en los procedimientos adjudicativos administrativos. En una controversia relacionada con la determinación de un oficial examinador de la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.), el Tribunal determinó:

> Al ejercer su discreción de permitir o no el uso de mecanismos de descubrimiento de prueba, el abogado-examinador que preside las vistas ante la C.I.P.A. **debe aplicar su discernimiento de forma razonable,**

**teniendo como fin último alcanzar una solución justa**. La discreción no puede ejercerse de forma arbitraria o irrazonable. Por tal razón **deben sopesarse, por un lado, el interés legítimo de una parte en el descubrimiento previo de prueba y, del otro, el interés de la agencia de resolver las controversias ante su consideración en forma expedita y sin las trabas procesales de los tribunales de justicia**.

*Íd.*, pág. 341. (Énfasis nuestro).

De esta manera, el oficial examinador o juez administrativo debe hacer un balance de intereses, velando por las garantías del debido proceso de ley y manteniendo un proceso justo, rápido y económico. Esto es, no permitir que el proceso se demore excesivamente o se convierta en uno oneroso para las partes.

> Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y el interés gubernamental protegido en la acción sumaria, incluso los cargos fiscales y administrativos que conllevaría imponer otras garantías procesales.

*Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010).

### III.

Con el derecho aplicable esbozado, nos encontramos en posición para resolver las controversias presentadas.

Antes de atender los errores señalados, debemos resaltar que este Tribunal no está facultado para revisar las determinaciones de la OEG *de novo*. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas, supra.* En el caso de autos, la parte recurrente no ha cuestionado las determinaciones de hecho que realizó la OEG, por lo que únicamente debemos cerciorarnos si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra,* Sec. 4.5.

Aun siendo expertos en el derecho, los tribunales les deben deferencia a las conclusiones de derecho de las agencias y no podemos descartar el criterio administrativo por completo. *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. Solo podemos sustituir nuestro criterio cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra*, pág. 36.

El Sr. Questell ha señalado tres errores que alega que la OEG cometió. En primer lugar, alega que la OEG erró al determinar que el término para concluir una auditoría es de dos (2) años y noventa (90) días y no requerir evidencia de haber detectado información no justificada dentro del periodo de los primeros noventa (90) días de auditoría. En segundo lugar, señaló que erró la OEG al no permitir la deposición como un mecanismo de descubrimiento de prueba. Finalmente, señaló que erró la OEG al no desestimar la *Querella* porque no se justificaba una investigación exhaustiva previo a la presentación de la *Querella*.

Como primer error, el Sr. Questell alega que la OEG auditó sus informes financieros para los años 2016 y 2017 fuera del término dispuesto por la Ley Núm. 1-2012. No le asiste la razón.

En el caso de autos, la OEG no se excedió del término para realizar una auditoría puesto que el mismo nunca comenzó a decursar. Como bien señala la OEG, el Artículo 5.4 de la Ley Núm. 1-2012, *supra*, dispone el mínimo de información que el Sr. Questell estaba obligado a incluir en su informe financiero. También surge que el *Requerimiento de Información* para los años 2016 y 2017 solicitaba información **omitida** del informe financiero. Particularmente, el Artículo 5.4 de la Ley Núm. 1-2012 requiere que se incluya información relacionada con **toda** propiedad, corporación, cuenta bancaria, deuda e ingresos que haya recibido el servidor público o que este tenga participación. Surge del

*Requerimiento* que el Sr. Questell no proveyó información completa sobre su participación en la corporación Aquamak Corp. y cuentas bancarias. Además, omitió por completo información sobre una serie de propiedades localizadas en Santa Isabel y Ponce. Información sobre estos activos y pasivos está explícitamente señalada en la Ley Núm. 1-2012 como información mínima requerida en los informes financieros.

La Ley Núm. 1-2012 y la jurisprudencia aplicable para los servidores públicos son claras: todo servidor público tiene la obligación ministerial de rendir informes financieros completos. De no hacerlo, los informes sometidos no podrán ser considerados presentados por no cumplir con las exigencias estatutarias. El Artículo 5.5 de la Ley Núm. 1-2012 dispone que los términos relevantes a las auditorías de informes financieros comienzan a decursar luego de que el informe sea presentado. Esto implica que los informes contengan la información requerida por ley.

En resumen, los informes financieros del Sr. Questell para los años 2016 y 2017 no contenían la información mínima que requiere el Artículo 5.4 de la Ley Núm. 1-2012. Al ser incompletos, deben ser considerados como no presentados. En consecuencia, no comenzó el término para iniciar una auditoría de los mismos, por lo que la OEG podía requerir información adicional en cualquier momento. No se cometió el error.

En cuanto al segundo error, no se cometió el mismo puesto que ante un balance razonable de los intereses, el oficial examinador no erró al no permitir la deposición como mecanismo de descubrimiento de prueba. Veamos.

La determinación del oficial examinador, el Lcdo. Pérez Alemán, fue que ninguna parte podía utilizar la deposición como mecanismo de descubrimiento de prueba. Vista dentro del marco de la razonabilidad, no existe causa para que este Tribunal intervenga

y sustituya el criterio del oficial examinador. La decisión no creó un perjuicio indebido en contra del Sr. Questell. Además, el Sr. Questell tenía disponible los otros mecanismos de descubrimiento de prueba que permiten las Reglas de Procedimiento Civil, *supra.* La realidad es que el Sr. Questell no ha puesto a este Tribunal en posición para resolver que se le violentó el debido proceso de ley. No ha señalado un daño que sufrió o un testigo que no pudo deponer. Tampoco ha señalado cuál es la información o prueba que no pudo obtener al haber sido denegado el mecanismo de la deposición. Sino alega a grandes rasgos que su prohibición violó su debido proceso de ley.

Estas aseveraciones son contrarias a lo que obra en el expediente administrativo. Surge del expediente que las partes tuvieron disponible todos los mecanismos de descubrimiento de prueba provistos por las Reglas de Procedimiento Civil salvo la deposición. La prohibición de la deposición fue aplicable tanto al Sr. Questell como a la OEG, por lo que no hubo un beneficio indebido para la agencia. A su vez, es en esta etapa apelativa que el Sr. Questell presenta por primera vez objeciones a la prohibición de la deposición.

No podemos perder de perspectiva que la acción administrativa en la OEG no es un proceso penal ni tampoco exige las mismas rigurosidades que un proceso ante los tribunales. Los procesos administrativos deben ser procesos rápidos y económicos, por lo que sólo deben garantizar los requisitos mínimos del debido proceso de ley. Esto es que el querellado reciba una notificación adecuada del procedimiento en su contra, tenga la oportunidad de presentar prueba en una vista, la oportunidad de contrainterrogar o refutar la prueba presentada y que el juzgador sea imparcial. A la luz del caso ante nuestra consideración, la prohibición de la deposición en este caso cumple con los propósitos de los procedimientos administrativos. Por su naturaleza, las deposiciones

son procesos costosos y que dilatan innecesariamente los procedimientos en aquellos casos donde su uso no ha sido justificado. En el caso de marras, el Sr. Questell no justificó la necesidad de la deposición ni la información que pretendía obtener mediante la misma. En consecuencia, no se cometió el error.

Finalmente, el Sr. Questell señaló que la OEG erró al no desestimar la *Querella* puesto que la investigación no se justificaba. Dicho planteamiento por el Sr. Questell no tiene méritos.

Surge de su faz que la investigación sí estaba justificada puesto que la misma se trataba de informes financieros incompletos. Nada en la Ley Núm. 1-2012 ni en el Reglamento OEG dispone que la agencia tiene que justificar una investigación exhaustiva previo la presentación de una *Querella*. Lo único que dispone el Reglamento OEG es que existe un procedimiento de vista informal. Dicho procedimiento inicia luego de que la OEG haya presentado un Requerimiento de Información. Durante el proceso, el querellado tiene derecho de comparecer a una vista informal en la agencia. El Reglamento OEG también provee varias oportunidades para que el querellado le dé fin al proceso, cumpliendo con la multa impuesta y entregando la información requerida.

En el caso de marras, surge claramente que la OEG cumplió con este proceso de vista informal. El Sr. Questell fue citado dos veces para comparecer a la vista ante OEG para explicar su incumplimiento con el *Requerimiento*. Además, surge que el Sr. Questell tuvo varias oportunidades para pagar multas de $300.00 y subsiguientemente $500.00 y entregar la información requerida para archivar el caso en la OEG. No cumplió. Por lo tanto, no existen indicios que la OEG no haya seguido el proceso establecido para eventualmente presentar la *Querella*. No podemos olvidar que el Artículo 5.6 de la Ley Núm. 1-2012, *supra*, establece como prohibición no someter la información requerida dentro del término

señalado. El incumplimiento del Sr. Questell fue suficiente para instar la *Querella* y darle inicio al procedimiento adjudicativo y vista formal.

Permitir que el Sr. Questell dicte las condiciones bajo las cuales la OEG puede ejercer sus facultades sería dejar en manos del querellado, y no la entidad fiscalizadora, decidir qué información debe presentar para lograr los propósitos de la Ley Núm. 1-2012. Es importante resaltar que el Sr. Questell ocupó un cargo público; ser servidor público es un privilegio y no un derecho. En ese sentido, cuando la Ley Núm. 1-2012 exige la rendición de informes financieros completos, esto es para cumplir con la ciudadanía que depositó su confianza en el Sr. Questell y no con requisitos arbitrarios del Gobierno. La Ley Núm. 1-2012 existe para promover y preservar la integridad de los servidores públicos y de las instituciones de nuestro Gobierno. *O.E.G. v. Rodríguez*, 159 DPR 98, 122 (2003). Según su propia Exposición de Motivos, el propósito de la legislación es atender "los retos de un servicio público íntegro, en el que los intereses personales de los servidores no sustituyan los intereses de la ciudadanía". Ley Núm. 1-2012, *supra*, Exposición de Motivos. Por lo tanto, la transparencia en las finanzas de los servidores públicos cumple con los propósitos de la Ley Núm. 1-2012. Resolver conforme con lo que solicita el Sr. Questell resultaría en un revés de los fines nobles de la Ley de Ética Gubernamental. En consecuencia, no se cometió el error.

**IV.**

Por los fundamentos discutidos, confirmamos la *Resolución* de la OEG.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones